United States District Court
for the
Southern District of Florida

| | |
|---|---|
| MedEnvios Healthcare, Inc., Plaintiff, <br><br> v. <br><br> Xavier Becerra, *in his official capacity as Secretary, United States Department of Health and Human Services*, Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 23-20068-Civ-Scola <br> ) <br> ) <br> ) <br> ) <br> ) |

### Order on Cross Motions for Summary Judgment

This matter is before the Court on the parties' cross motions for summary judgment. The Defendant Secretary of Health and Human Services filed a motion for summary judgment (ECF No. 68) and statement of material facts (ECF No. 69), to which the Plaintiff MedEnvios Healthcare, Inc. responded (ECF Nos. 74, 75). The Defendant filed a reply. (ECF No. 76.) MedEnvios filed its own motion for summary judgment (ECF No. 70) and statement of material facts (ECF No. 71) to which the Defendant responded (ECF Nos. 72, 73), and MedEnvios replied (ECF No. 78). MedEnvios also filed a notice of supplemental authority (ECF No. 80), and the Defendant responded (ECF No. 81). In addition to holding a hearing, the Court has considered the extensive briefing, the record, and the relevant legal authorities. For the below reasons, the Court **grants in part and denies in part** the Defendant's motion for summary judgment (**ECF No. 68**), **grants in part and denies in part** MedEnvios's motion for summary judgment (**ECF No. 70**), and **vacates** the extrapolated overpayment demands at issue.

1. **Background**

The federal Medicare program is administered by the Department of Health and Human Services ("HHS" or "the Department") through the Centers for Medicare & Medicaid Services ("CMS"). The Department through CMS and its contractors relies on post-payment audits to identify problems with Medicare claims made by healthcare providers and suppliers because pre-payment review of the over 1 billion claims received annually would be untenable. *See Fla. Med. Ctr. of Clearwater, Inc. v. Sebelius*, 614 F.3d 1276, 1279 n.4 (11th Cir. 2010) ("For reasons of administrative efficiency, carriers typically authorize payment on claims immediately upon receipt of claims, so

long as the claims do not contain glaring irregularities.") "CMS contractors may conduct a post-payment audit of providers to ensure that the Medicare services that providers are billing are medically necessary and meet the requirements of the Medicare program." *Gen. Med., P.C. v. Azar*, 963 F.3d 516, 519 (6th Cir. 2020) (citing 42 U.S.C. § 1395ddd(b)). "In a post-payment audit CMS contractors review a random sample of a provider's Medicare claims. CMS contractors will review the records and then calculate an error rate based on the review. If there is a sustained or high level of payment error, the CMS contractor will extrapolate that error rate over the provider's total Medicare claims to determine a total amount of overpayment." *Id.* (cleaned up) (citing 42 U.S.C. § 1395ddd(f)(3)-(4)).

The Plaintiff, MedEnvios, is a Florida supplier of durable medical equipment, prosthetics, orthotics, and supplies enrolled in the Medicare program. This is a dispute over two post-audit determinations by HHS that the Department overpaid MedEnvios for Medicare-covered medical equipment. The two determinations resulted in three levels of administrative appeals and culminated with final agency decisions by administrative law judges ("ALJs"). MedEnvios appealed each final agency decision to the district court, and this Court consolidated the two cases on MedEnvios's unopposed motion to do so, noting the two common legal questions between them. (ECF No. 29.) In both appeals processes, MedEnvios has received partially favorable decisions resulting in a reduction of the total demanded overpayment amount. However, the reviewer at each level has upheld the general design of the audits and their sampling in both appealed matters. Both parties have now moved for summary judgment, and the Court held a hearing on the motions on March 21, 2024.

## 2. Legal Standard

42 U.S.C. § 405(g) provides the basis for the court's jurisdiction to review final decisions of the Secretary of HHS. 42 U.S.C. § 405(h); *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984) ("42 U.S.C. § 405(h), made applicable to the Medicare Act[,] . . . provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act."). Judicial review of an ALJ decision under § 405(g) is "limited to an inquiry into whether there is substantial evidence to support the findings of the [ALJ], and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d, 1219, 1221 (11th Cir. 2002). Whether the ALJ applied the correct legal standards is a question of law, which this Court reviews de novo. *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc.*

*Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). "[A] court reviewing an agency determination under § 405(g) has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide, including, where necessary, the authority to develop an evidentiary record." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 23-24 (2000).

### 3. Analysis

MedEnvios argues that it is entitled to summary judgment because the Defendant has violated its due process rights in two ways. First, according to MedEnvios, the Defendant improperly excluded "zero-paid" claims from the statistical sampling and extrapolation process when evaluating whether and to what extent the Department overpaid MedEnvios. Second, MedEnvios claims that the Department and its contractors' failure to provide certain evidence supporting the recalculated overpayment amounts violated MedEnvios's procedural due process rights.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]ndividuals whose property interests are at stake due to government actions are entitled to notice of the proceedings and an opportunity to be heard." *Mesa Valderrama v. United States*, 417 F.3d 1189, 1196 (11th Cir. 2005) (citing *Dusenbery v. United States*, 534 U.S. 161, 167–68 (2002)). "'Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961). The concept "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

When evaluating an alleged due process violation, courts consider "three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Before delving into the *Mathews* test, MedEnvios argues that it has a protected property interest in Medicare reimbursements for services rendered to beneficiaries because the extrapolated overpayment amounts are "over and above" the actual amounts contractors calculated and therefore invade MedEnvios's protected property rights in its own funds, or alternatively, its

assigned property rights of Medicare beneficiaries. (Pl.'s Mot. at 13-14.[1]) While not directly addressed in the Secretary's briefing, the Defendant disagreed with this argument on the record at the hearing because of the contingent nature of the interest MedEnvios has in claims paid by the Medicare program—*i.e.*, that MedEnvios was aware that any payments received pursuant to the program could be recouped upon the determination that claims should not have been paid.

The Court agrees with MedEnvios that it does have a protected property interest in the funds subject to the extrapolated overpayment demands. While the Eleventh Circuit has acknowledged that providers do not have a property interest in disputed overpayments subject to recoupment, they *do* have a property interest in their own money. *Zen Grp., Inc. v. Agency for Health Care Admin.*, 80 F.4th 1319, 1326 (11th Cir. 2023) (holding that the plaintiff "had at least a due-process right to challenge a $276,067.95 fine because the fine would deprive [the plaintiff] of money on top of the recoupment of Medicaid payments for services rendered.") Similar to the fine discussed in *Zen Group*, the extrapolated overpayments reflect amounts over and above the actual overpayments confirmed in claim sampling, therefore implicating MedEnvios's own money. MedEnvios's property interests are therefore at stake in this appeal of the Department's overpayment demands.

### A. Failure to include "zero-paid" claims in sampling

Moving to the alleged violations, MedEnvios argues that its due process rights were violated because HHS failed to comply with the procedures set forth in statute, regulation, and "sub-regulatory guidance" that mandate "certain due process minimum protections be provided to health care suppliers in the statistical sampling and extrapolation process." (Pl.'s Resp. at 9.) Specifically, MedEnvios objects to the Defendant's exclusion of claims for which the Department never made a payment to MedEnvios from the sampling frame. MedEnvios assumes that if those claims had been part of the sampling frame, the calculated overpayment amount could have been lower because claims that should have been paid but were not may have lowered the net overpayment. While this is likely true, the question is whether the Department's exclusion of these claims violated MedEnvios's due process rights because the Department was required to include them by law.

MedEnvios says yes, and the Defendant says no. The three principal sources of authority that MedEnvios cites are the statute, regulations, and

---

[1] The Court references the page numbers reflected in document headers rather than internal numbering.

administrative manual relevant to the administration of Medicare integrity reviews. The relevant statute reads that:

> Under the Program, the Secretary shall enter into contracts with recovery audit contractors in accordance with this subsection for the purpose of identifying **underpayments and overpayments and recouping overpayments** under this subchapter with respect to all services for which payment is made under this subchapter. 42 U.S.C. § 1395ddd(h)(1) (emphasis added).

The Medicaid Recovery Audit Contractors Program subpart of the Code of Federal Regulations states:

> As used in this subpart— Medicaid RAC program means a recovery audit contractor program administered by a State to identify **overpayments and underpayments** and recoup overpayments. 42 C.F.R. § 455.504.

MedEnvios interprets the mention of underpayments in these provisions to mean that "Medicare auditors are required by statute to identify *both* overpaid and underpaid claims when conducting post-payment reviews." (Pl.'s Mot. at 19 (emphasis added).) According to MedEnvios, this establishes a due process minimum by which the post-payment audits must take place. In addition to the statute and the Code of Federal Regulations, the Medicare Program Integrity Manual ("MPIM") references underpayments and "over- or underpaid" claims for inclusion in contractors' calculation of a supplier's overpayment amount, seemingly demanding inclusion of "zero-paid" claims in every audit. (Pl.'s Mot. at 19-20 (citing MPIM §§ 8.4.1.3, 8.4.5.2, 8.4.4.4.3.) However, the MPIM elsewhere instructs that "[t]he universe shall consist of all fully and partially paid claims[,]" seemingly excluding these "zero-paid" claims. (*Id.* at 20 (citing MPIM § 8.4.3.2.1.) In order to explain this divergence, MedEnvios relies heavily on the distinction between "zero-paid" and "unpaid" claims—"unpaid" purportedly meaning "un-adjudicated" and therefore permissible to exclude and "zero-paid" meaning adjudicated with a payment amount of zero. (Pl.'s Mot. at 19-20.) This statutory scheme, taking into account the regulations and the MPIM, according to MedEnvios, shows that due process requires the inclusion of "zero-paid" claims in the audits' statistical sampling and extrapolation in order to avoid bias against the supplier (in this case, MedEnvios).

The Department reads the statute and its progeny differently, contending that there is no requirement for Medicare contractors to include unpaid *or* "zero-paid" claims in sampling frames to avoid running afoul of procedural due process rights. Rather, the statute merely establishes a framework for performing post-payment reviews, and "left it to the Secretary to establish the methodology for selecting samples of Medicare claims for audit[.]" (Def.'s Reply at 3.) "For this purpose the Secretary, through his agency CMS, published methodological guidelines in the Medicare Program Integrity Manual ("MPIM"), CMS Publication No. 100-08, at Chapter 8 ("Administrative Actions and Statistical Sampling for Overpayment Estimates")." (*Id.* at 4.) And the relevant MPIM provision clearly instructs that "once the program integrity contractor has defined the universe for audit, the composition of that universe 'shall consist of all full and partially paid claims.'" MPIM, Ch. 8, § 8.4.3.2.1.B. This, by the Department's reading, excludes "zero-paid" claims because they are claims that "were not paid in full; they were not paid in part; they were paid *$0.*" (Def.'s Reply at 5.)

On balance, the Court agrees with the Secretary that the language of the statute does not permit the Court to make the logical jump that all Medicare program integrity contractors are *required* to include these claims in all of their audits. Both parties agree that "there are several different types of Medicare contractors that are tasked with performing retrospective reviews of Medicare payments" (Pl.'s Reply at 7.) Some contractors in some audits may include what MedEnvios refers to as "zero-paid" claims in their samples, but not all contractors are required to do so regardless of the purpose of the audit.

The Department also points out that this interpretation of the statutory and regulatory authority is consistent with the relevant Medicare contractors' mission, which is to "audit waste"—they were after all called "zone program integrity contractors." (Def.'s Resp. at 5 (citing *Dominion Ambulance, L.L.C. v. Azar*, 968 F.3d 429, 441-42 (5th Cir. 2020).) This demonstrates that the contractor's principal concern was to audit fully and partially paid claims—not claims that the Department never paid and by definition could not have resulted in overpayment. Due process "'does not require perfect process'" nor does it "entail a right to 'choose the precise process [one might] desire.'" *Thibodeaux v. Bordelon*, 740 F.2d 329, 338 (5th Cir. 1984); *FDIC v. Morley*, 915 F.2d 1517, 1522 (11th Cir. 1990)). In this particular case, the process was potentially imperfect but reasonably tailored to the aims of the audit.

Importantly, in addition to allowing the Department to fill in the details on the conduct of Medicare audits, Congress provided for a separate process for suppliers to challenge determinations that incorrectly result in "zero-paid" claims. *See* 42 U.S.C. § 1395ff(a)(3). Providers and suppliers who believe a

claim has been improperly denied have a calendar year following the date of service to appeal the determination. 42 C.F.R. § 424.44. This way, the party with the greatest interest in vindicating claims that the Department should have reimbursed has a clear recourse, separate and apart from the Department's own investigation and recoupment of its potentially wasteful spending. This process therefore accounts for the "zero-paid" claims, and the Department need not account for them again in post-payment audits. The Department therefore has not violated MedEnvios's procedural due process rights by excluding "zero-paid" claims from the sampling universe in the two relevant post-payment audits.

### B. Failure to provide evidence supporting recalculated overpayments

Second, MedEnvios argues that the Defendant failed to provide sufficient documentation to support overpayments recalculated following partially favorable appellate decisions, allegedly depriving MedEnvios of notice. Following partially favorable decisions on appeal, the relevant contractor must "effectuate" the decision by recalculating the extrapolated overpayment amount to be recouped from the supplier based upon the revised decisions on individual sampled Medicare claims. The contractor then sends the supplier a revised demand letter reflecting the new overpayment amount. Without the underlying documentation showing how the contractor arrived at the new amount, MedEnvios claims that it lacked "the information necessary to mount a meaningful challenge to those recalculations." (Pl.'s Reply at 5.) MedEnvios further expanded on this argument at the March 21, 2024 hearing, explaining that it could not independently replicate the calculations, including to determine which reductions in the calculated overpayments had been applied to the principal versus the (now very substantial) accrued interest. According to MedEnvios, it therefore could not accurately determine whether and on what basis to appeal the determinations.

Applying the *Mathews* test to this deprivation, the Court agrees that MedEnvios's procedural due process rights were violated. Without the ability to verify the contractor's calculations, "a provider does not have the information and data necessary to mount a due process challenge to the statistical validity of the sample, as is its right . . . ." *Global Home Care, Inc. v. Nat'l Gov't Servs.*, Dkt. No. M-11-116, HHS-Department Appeals Board, Order of MAC (Jan. 11, 2011). "An appeal challenging the validity of the sampling methodology must be predicated on the actual statistical validity of the sample as drawn and conducted." *Maxmed Healthcare, Inc. v. Price*, 860 F.3d 335, 339 (5th Cir. 2017) (citing MPIM § 8.4.1.1).

MedEnvios was and is prejudiced by the unavailability of the recalculation worksheets because MedEnvios did not receive three of the four relevant recalculation worksheets within enough time to satisfy its procedural due process rights by recreating the recalculations to verify the revised extrapolated amounts. For the audit underlying case 23-20068, MedEnvios did not receive either recalculation worksheet until the latest appeal was already before this Court. At that time, the Department provided the recalculation sheet for the post-partially favorable reconsideration decision (the first appeal). (Pl.'s Mot. at 26-27.) For the audit underlying case 23-20065, MedEnvios *did* receive the documents supporting the post-reconsideration recalculation in advance of the ALJ hearing, and received the documentation for the post-ALJ recalculation on November 2, 2023. (*Id.* at 27; Pl.'s Statement of Material Facts, ECF No. 71 ¶¶ 47, 53.) MedEnvios did not receive any of this documentation contemporaneously with the revised overpayment demands.

Further, under the third *Mathews* factor, the prejudice to MedEnvios in having to mount appeals without reviewing the contractors' effectuation work easily outweighs any administrative difficulty of timely providing the worksheets. Provision of this information should be a negligible burden on the Department and its contractors. The MPIM already instructs that "[d]ocumentation shall be kept in sufficient detail so that the sampling frame can be re-created should the methodology be challenged. The contractor shall keep an electronic copy of the sampling frame." MPIM § 8.4.4.4.1. Thus, contractors are already required to maintain this information, and the added burden of providing the information on request would be minimal. The Court therefore concludes that the Department has run afoul of MedEnvios's procedural due process rights by failing to provide the documentation supporting the recalculated overpayment amounts.

### 4. Conclusion

For the above reasons, the Court **grants in part and denies in part** the Defendant's motion for summary judgment (**ECF No. 68**) and **grants in part and denies in part** MedEnvios's motion for summary judgment (**ECF No. 70**) because the Department violated MedEnvios's due process rights by failing to timely provide the documents showing how the revised overpayment demands were calculated. The extrapolated overpayment demands implementing the ALJ decisions are therefore **vacated**.

**Done and ordered** at Miami, Florida on March 25, 2024.

> _____
> Robert N. Scola, Jr.
> United States District Judge