United States District Court
for the
Southern District of Florida

| | |
|---|---|
| MedEnvios Healthcare, Inc., Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 23-20068-Civ-Scola ) |
| Xavier Becerra, *in his official capacity as Secretary, United States Department of Health and Human Services*, Defendant. | ) ) ) ) ) |

## Order on Cross Motions for Summary Judgment

This matter is before the Court on the parties' second round of cross motions for summary judgment. The Plaintiff MedEnvios Healthcare, Inc. filed two motions for summary judgment (ECF Nos. 92, 96) and statements of material facts (ECF Nos. 93, 97), to which the Defendant Secretary of Health and Human Services responded (ECF Nos. 98, 99, 102, 103). MedEnvios filed replies (ECF Nos. 104, 105). The Defendant filed its own motion for summary judgment (ECF No. 95) and a statement of material facts (ECF No. 95), to which MedEnvios responded (ECF Nos. 100, 101). The Defendant filed a reply (ECF No. 106). The Court also held a hearing on the cross-motions for summary judgment on November 21, 2024, and has considered the briefing, the record, and the relevant legal authorities. For the following reasons, the Court **grants in part and denies in part** MedEnvios's motions for summary judgment (**ECF Nos. 92, 96**) and **grants in part and denies in part** MedEnvios's motion for summary judgment (**ECF No. 95**). Specifically, the Court finds that MedEnvios's due process rights were not violated (1) when the Health Integrity Audit's target universe did not include zero-paid claims; (2) by the accumulation of interest on the alleged overpayment amounts; and (3) by the fact of recoupment of the alleged overpayments. However, MedEnvios is entitled to an accounting as agreed to by the parties at the November 21, 2024 hearing.

1. **Background**

The federal Medicare program is administered by the Department of Health and Human Services ("HHS" or "the Department") through the Centers for Medicare & Medicaid Services ("CMS"). The Department through CMS and its contractors relies on post-payment audits to identify problems with Medicare claims made by healthcare providers and suppliers because pre-

payment review of the over 1 billion claims received annually would be untenable. *See Fla. Med. Ctr. of Clearwater, Inc. v. Sebelius*, 614 F.3d 1276, 1279 n.4 (11th Cir. 2010) ("For reasons of administrative efficiency, carriers typically authorize payment on claims immediately upon receipt of claims, so long as the claims do not contain glaring irregularities.") "CMS contractors may conduct a post-payment audit of providers to ensure that the Medicare services that providers are billing are medically necessary and meet the requirements of the Medicare program." *Gen. Med., P.C. v. Azar*, 963 F.3d 516, 519 (6th Cir. 2020) (citing 42 U.S.C. § 1395ddd(b)). "In a post-payment audit CMS contractors review a random sample of a provider's Medicare claims. CMS contractors will review the records and then calculate an error rate based on the review. If there is a sustained or high level of payment error, the CMS contractor will extrapolate that error rate over the provider's total Medicare claims to determine a total amount of overpayment." *Id.* (cleaned up) (citing 42 U.S.C. § 1395ddd(f)(3)-(4)).

The Plaintiff, MedEnvios, is a Florida supplier of durable medical equipment, prosthetics, orthotics, and supplies enrolled in the Medicare program. This is a dispute over two post-audit determinations by HHS (the "Health Integrity Audit" and the "Safeguard Audit") that the Department overpaid MedEnvios for Medicare-covered medical equipment. The two determinations resulted in three levels of administrative appeals and culminated with final agency decisions by administrative law judges ("ALJs"). MedEnvios appealed each final agency decision to the district court, and this Court consolidated the two cases on MedEnvios's unopposed motion to do so, noting the two common legal issues between them. (ECF No. 29.) In both appeals processes, MedEnvios has received partially favorable decisions resulting in a reduction of the total demanded overpayment amount. However, the reviewer at each level has upheld the general design of the audits and their sampling in both appealed matters.

The parties previously cross-moved for partial summary judgment. On March 25, 2024, the Court granted in part and denied in part both parties' motions. (Order on Parties' Cross-Motions for Summary Judgment, ECF No. 84.) Specifically, the Court found that MedEnvios's procedural due process rights were not violated when the Defendant excluded "zero-paid" claims from the sampling universe in the two post-payment audits, but were violated when the Defendant failed to provide evidence supporting the recalculated overpayments. (*Id.* at 7-8.) The Court thus vacated the extrapolated overpayment demands at issue. (*Id.* at 1.) The Court subsequently denied the Defendant's motion for reconsideration of the Court's latter conclusion. (ECF No. 91.)

Now, the parties have cross-moved for summary judgment on all remaining claims and issues. These issues, on which MedEnvios seeks declaratory judgments are whether (1) the Defendant failed to produce the target universe of claims with respect to the Health Integrity Audit as to violate MedEnvios's procedural due process rights; (2) the Defendant's delays in adjudicating MedEnvios's appeals of both audits led to an excessive accumulation of interest as to violate MedEnvios's procedural due process rights; (3) the Defendant improperly recouped funds with respect to both audits as to violate MedEnvios's procedural due process rights; and (4) whether the Defendant failed to give MedEnvios a proper accounting of both audits as to violate MedEnvios's procedural due process rights.

### 2. Legal Standard

Summary judgment is proper if, following discovery, the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id. at 1260*. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 323-24. The nonmovant's evidence must be significantly probative to support the claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *See id.; Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. Id. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not

grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

### 3. Analysis

As the Court explains in further detail below, MedEnvios's due process rights were not violated (1) when the Health Integrity Audit did not include zero-paid claims in its target universe; (2) by the accumulation of interest on the alleged overpayment amounts; and (3) by the recoupment of the alleged overpayments. MedEnvios, however, is entitled to an accounting as agreed to by the parties at the November, 21, 2024 hearing.

### A. The Court's Jurisdiction

A threshold issue is the Court's jurisdiction to review final decisions of the Secretary of the HHS. Although the Defendant spent some time in its briefing discussing "[t]he scope of judicial review" of this Court (*see, e.g.*, ECF No. 94, at 2-3), the Defendant does not seriously dispute that the Court has the jurisdiction to decide de novo the constitutional adequacy of the HHS's procedural due process protections as applied in this case. The Defendant also did not raise this issue at the November 21, 2024 hearing.

When exercising its jurisdiction on the parties' last round of cross-motions for summary judgment, the Court explained that 42 U.S.C. § 405(g) gives it jurisdiction to review final decisions of the Secretary of HHS. 42 U.S.C. § 405(h); *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984) ("42 U.S.C. § 405(h), made applicable to the Medicare Act[,] . . . provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act."). Judicial review of an ALJ decision under § 405(g) is "limited to an inquiry into whether there is substantial evidence to support the findings of the [ALJ], and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d, 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). Whether the ALJ applied the correct legal standards is a question of law, which this Court reviews de novo. *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). "[A] court reviewing an agency determination under § 405(g) has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide, including, where necessary, the

authority to develop an evidentiary record." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 23-24 (2000).

All the remaining claims allege violations of MedEnvios's rights to procedural due process. This Court previously held that MedEnvios has "a property interest in the funds subject to the extrapolated overpayment demands" and its "property interests are therefore at stake in this appeal of the [Defendant's] overpayment demands." (Order on Cross-Motions for Summary Judgment, at 4.)

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]ndividuals whose property interests are at stake due to government actions are entitled to notice of the proceedings and an opportunity to be heard." *Mesa Valderrama v. United States*, 417 F.3d 1189, 1196 (11th Cir. 2005) (citing *Dusenbery v. United States*, 534 U.S. 161, 167–68 (2002)). "Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961). The concept "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

When evaluating an alleged due process violation, courts consider "three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### B. Failure to Produce the Target Universe of Claims in the Statistical Sampling with Respect to the Health Integrity Audit

Only with respect to the Health Integrity Audit, MedEnvios claims its procedural due process rights were violated when the Defendant "fail[ed] to produce the target universe of claims in the contractor's statistical sampling and extrapolation" that resulted in the initial overpayment demand. (ECF No. 96 at 12.) MedEnvios specifically cites the fact that the Defendant did not produce a universe that included zero-paid claims. (*Id.* at 13-14.)

The Defendant casts MedEnvios's claim as another way of arguing that the postpayment audit was based on a sample that should have, but did not, include "zero-paid claims." (ECF No. 102 at 3-5; ECF No. 94 at 7.) The

Defendant points to Magistrate Judge Goodman's denial of MedEnvios's motion regarding the alleged incompleteness of the Administrative Record, and that this Court also ruled on the first round of summary judgment motions "that a Medicare program integrity contractor's postpayment audit is not required to include zero-paid claims in its universe of claims." (ECF No. 102 at 4-5 (citation omitted); ECF No. 94 at 7.)

In its own motion for summary judgment, the Defendant argues that the ALJs found that the audits followed the applicable guidelines, and that MedEnvios indicated that it "had received the applicable audit documentation." (ECF No. 94, at 6.) The Defendant also points to the fact that "[t]he statisticians who participated in the redetermination and the reconsideration levels of the appeal process indeed upheld the statistical work done by the program integrity contractors." (*Id.*)

The Defendant also argues that "MedEnvios had everything that Health Integrity, the program integrity contractor, had created and documented; MedEnvios had everything that was before the agency adjudicators, including the ALJ, the final agency decision-maker." (ECF No. 106, at 3.) To the Defendant, MedEnvios is simply mistaken as to what the universe is: it is not *all* claims submitted for review, but only *paid* claims submitted for review. (*Id.* at 4 (citing MPIM, Chapter 8, § 8.4.3.2.1 B).)

MedEnvios has several responses. First, it disputes that it ever received the proper audit documentation. (ECF No. 100 at 11.) Second, MedEnvios does not believe that its ability to replicate the sample suffices for due process because the MPIM "require[s] that the sampling frame must be able to be recreated," rather than just replicated. (*Id.* at 12) Here, "there is no indication that the statisticians were able to recreate the sampling **frame** and sampling **process**." (*Id.* at 13-14.)

Third, MedEnvios notes that Judge Goodman, in his order, noted that "[t]he analysis of whether MedEnvios was seeking to complete or supplement the administrative record, and whether the recalculation worksheets were considered by the ALJs below, is distinct from whether their absence from the record deprived MedEnvios of its due process rights." (*Id.* at 15 (citing ECF No. 91, 3-4).)

In sum, MedEnvios's claim comes down to whether it received the target "universe" of claims subject to the Health Integrity Audit. To resolve MedEnvios's claim, then, the Court must determine what that "universe" is, and whether that universe comports with constitutional due process.

For Part B claims, which are what are at issue in the Health Integrity Audit, MPIM guidance is clear that the universe consists of those "fully and partially paid claims submitted by the provider by the provider/supplier for the

period selected for review and for the sampling units to be reviewed." MPIM § 8.4.3.2.1.B. This is in contrast with Part A claims, in which "[c]laims with no payment may be included in the universe . . . ." MPIM § 8.4.3.2.1.A. Because MedEnvios received the target universe as defined by MPIM guidance (fully and partially paid claims), the Defendant provided MedEnvios with the target universe of claims. And as this Court has previously explained, excluding "zero-paid" claims from the universe does not violate MedEnvios's procedural due process rights. (Order on Cross-Motions for Summary Judgment, 6-7.)

MedEnvios may disapprove of how the target universe is defined, but the Court will repeat what it said in its order on the parties' first round of cross-motions for summary judgment: "Due process does not require perfect process nor does it entail a right to choose the precise process [one might] desire. In this particular case, the process was potentially imperfect but reasonably tailored to the aims of the audit." (*Id.* at 6 (cleaned up).)

Therefore, with respect to this claim, the Defendant's motion for summary judgment is granted and MedEnvios's is denied.

### C. Excessive Accumulation of Interest Claim

With respect to both audits, MedEnvios argues that its procedural due process rights were violated when the Defendant did not provide MedEnvios with an ALJ hearing for over four years after MedEnvios requested one, which "led to an accumulation of undue interest [on the overpayments] all while MedEnvios was deprived of documentation necessary to mount a due process challenge." (ECF No. 92 at 10; *see also* ECF No. 96 at 16.) MedEnvios points out that the Defendant was statutorily required under 42 C.F.R. § 405.1016 to provide MedEnvios a hearing within ninety days of such a request. (ECF No. 92 at 9.)

The Defendant cites two cases that held that no violation of due process rights occurs based on the accumulation of interest when the appellant does not exercise its statutory option to escalate its appeal once the ninety-day timeline has expired. (ECF No. 94 at 8-9 (citing *Sahara Home Care, Inc. v. Azar*, 975 F.3d 523 (5th Cir. 2020); *Accident, Inj. & Rehab., PC v. Azar*, 943 F.3d 195 (4th Cir. 2019)).)

It is undisputed that MedEnvios did not exercise its statutory right under 42 U.S.C. § 1395ff(d)(3)(A) to escalate its appeal to the Medicare Appeals Council after ninety days, and then to the district court if the Appeals Council did not rule within 180 days. 42 U.S.C. § 1395ff(d)(2)(A); 42 C.F.R. § 405.1100(c). MedEnvios counters that the Defendant "fails to recognize that if [it] had escalated its appeals past the ALJ, it would have been deprived of its

opportunity be heard in a **meaningful** manner" due to the Defendant's other procedural due process violations. (ECF No. 100 at 16 (quoting *Mathews*, 424 U.S. at 333).)

However, "the escalation procedure is specifically made part of the process to ensure a timely post-deprivation review *in a court of law*." *Accident, Inj. & Rehab., PC*, 943 F.3d at 204; *Padda v. Becerra*, 37 F. 4th 1376, 1383 ("[A] provider's ability to escalate its claims ensures that the provider receives a timely disposition of its claims, even when there are delays at the ALJ stage."); *see also Sahara*, 975 F.3d at 532 ("And in the case of a backlog, Congress provided the ability to bypass long waits on the way to judicial review.") Judicial review "is the classic protection provided by the Due Process Clause against arbitrary deprivations of life, liberty, or property." *Padda*, 37 F. 4th at 1383. Therefore, under the escalation procedures authorized by statute, MedEnvios could have more expeditiously brought the same claims it brought to this Court. That it did not was its choice and it "cannot complain that its election denies it due process." *Accident, Inj. & Rehab., PC*, 943 F.3d at 204; *see also Padda*, 37 F.4th at 1384; *Sahara*, 975 F.3d at 532.[1] Moreover, as MedEnvios conceded at the hearing, it is entitled to interest on the funds that were improperly recouped in the first place. *See* 42 U.S.C. § 1395ddd(f)(2)(B), Here, MedEnvios has adequate protections for its own property.

Therefore, with respect to this claim, the Defendant's motion for summary judgment is granted and MedEnvios's is denied.

### D. Improper Recoupment of Funds

MedEnvios next argues that the withholding of the statistical sampling documentation held to be a due process violation in the Court's order on the parties' first round of cross-motions for summary judgment "generated a corresponding due process violation." (ECF No. 92 at 10-11, ECF No. 96 at 17.) Specifically, MedEnvios argues that this corresponding violation consists of "Defendant's recoupment of MedEnvios' Medicare reimbursements and collection in excess of the alleged overpayment, with interest, while MedEnvios remained unable to mount a meaningful challenge to the recalculated extrapolation given Defendant's withholdings." (ECF No. 92 at 11.) MedEnvios again cites *Padda* and *Sahara*, where the Fourth and Fifth Circuits, respectively, held that recoupment prior to an ALJ hearing did *not* violate a

---

[1] Because the Court finds for the Defendant on this basis, it does not address the Defendant's alternative argument that the Court has no basis to alter the interest to be charged on overpayments. (ECF No. 94 at 7-8.)

provider's right to due process where the first two stages of administrative review "gave the providers notice and an opportunity to be heard and because the providers had chosen to forgo escalation past the ALJ." (ECF No. 92 at 11-12.) MedEnvios believes these cases are distinguishable because where in those cases the providers had a meaningful opportunity to be heard at the first two levels of administrative review, MedEnvios was "not afforded the documentation necessary to mount a meaningful challenge to the recalculations." (*Id.* at 12.) In other words, it contends that it "never got[] the same notice and opportunity to be heard that the providers had in *Padda* and *Sahara*." (*Id.*)

The Defendant, on the other hand, contends that "MedEnvios's complaint about recoupment is apparently based on dissatisfaction that the overpayments were determined at all." (ECF No. 94 at 10.) The Defendant also points out that *Padda* and *Sahara* did not "involve[] facts where a court found that recoupment should not have occurred" and thus do not "suggest[] guidelines for evaluating recoupment as erroneous." (ECF No. 98 at 5.)

The Court agrees with the Defendant. *Padda* and *Sahara* do not involve instances in which recoupments were deemed erroneous. Moreover, HHS has a statutory right to recover alleged overpayments only after redetermination and reconsideration. *See* 42 U.S.C. § 1395ddd(f)(2)(A). And MedEnvios is adequately protected should the overpayments be deemed improper because it is entitled to receive back those funds, with interest. *See* 42 U.S.C. § 1395ddd(f)(2)(B). Weighing the different interests at stake and the protections provided to MedEnvios, the Court concludes that the Defendant's original due process violation does not make the statutorily prescribed conduct of recoupment itself a corresponding due process violation.

Therefore, with respect to this claim, the Defendant's motion for summary judgment is granted and MedEnvios's is denied.

### E. Improper Accounting

At the hearing, the parties agreed that MedEnvios is entitled to an accounting on the debts and credits associated with the alleged overpayments. MedEnvios is entitled to an accounting that reflects those debts and credits, such as the "'L' Ledger" received by First Coast Services discussed at the hearing.

With respect to this claim, MedEnvios's motion for summary judgment is granted and the Defendant's is denied.

### 4. Conclusion

For the foregoing reasons, the Court **grants in part and denies in part** MedEnvios's motions for summary judgment (**ECF Nos. 92, 96**) and **grants in part and denies in part** MedEnvios's motion for summary judgment (**ECF No. 95**). To summarize, MedEnvios's due process rights were not violated (1) when the Health Integrity Audit did not include zero-paid claims in its target universe; (2) by the accumulation of interest; and (3) by the fact of recoupment. MedEnvios is entitled to an accounting as agreed to by the parties at the November, 21, 2024 hearing.

The clerk is directed to **close** this case.

**Done and ordered** at Miami, Florida on November 25, 2024.

_____
Robert N. Scola, Jr.
United States District Judge